## THE BATHGATE.

District Court, E. D. Pennsylvania.   May 17, 1927.

No. 181.

**Shipping ☞136—Tug and barge constitute "single carrier" and tug is not liable to cargo owners for negligence, consisting of errors of navigation.**

Tug and barge in tow, carrying cargo, constitute a single carrier, and hence tug is entitled to benefits of Harter Act, and not liable for negligence consisting of errors of navigation.

In Admiralty. Libel by the Insurance Company of North America against the steam tug Bathgate and another. On motion for new trial and reargument. Libel dismissed.

Lewis, Adler & Laws, of Philadelphia, Pa., for libelant.

Conlen, Acker, Manning & Brown, of Philadelphia, Pa., for respondent.

DICKINSON, District Judge. The conclusion reached is that the motion be allowed and that a decree may be submitted dismissing the libel, with costs to the respondents.

### Discussion.

The above conclusion means a change of front, an explanation of which is in order. The case was tried upon the doctrine, accepted generally by the admiralty bar, that the benefits of the Harter Act extended to carriers, but did not include towing vessels. The cause of action here was the negligence of a tug which had been guilty of "errors of navigation." There had been, however, an attempt to give the tug the benefits of the act by contract. The sole question, therefore, became whether a tug could contract herself out of negligence. Shortly after the cause was ruled, the opinion in Sacramento Navigation Co. v. Salz, 47 S. Ct. 368, 71 L. Ed. ——, 1927 A. M. C. 397, was handed down, promptly followed by the above motions, which were to be allowed or denied by the results of a reargument in the light of this decided case. The reasoning of this case corrects the view of the admiralty bar. The true doctrine is now known to be that a carrying barge, with the tug which tows her, form a unit, and as such are to be deemed, for the purpose of the Harter Act, a carrier within its benefits. There is

now no distinction in respect to exemption from liability between a carrier supplied with her own motive power and one the motive power of which is supplied by a tug.

The instant case in consequence presents the simple question of whether a vessel or her owner is "responsible for damage or loss resulting from faults or errors in navigation, or in the management of said vessel"; such owner having complied with all the requirements of the act? The experienced proctors for the libelant argue that the ruling in the Sacramento Case is inapplicable to the instant case for several reasons.

The cited case differs from the instant case in several of its fact features, but the basis of the ruling is applicable, as we read it, to all contracts of affreightment, and the contract here was such a contract. We are unable to follow the experienced proctors for the libelant in the further distinction which they seek to make between a proceeding in personam and one in rem, because the Harter Act extends the exemption from liability to both the owner and the vessel alike. As a consequence we are unable to see the value of the distinction made. It is likewise true that there is no provision in the contract here that barge and tug shall be deemed one carrying vessel, but the contract here was one of carriage, and it was attempted to be accomplished by means of a barge and a towing tug.

As we read the Sacramento Case, the finding of a unity of barge and tug is not because the parties have agreed that the two shall be considered as one, but the finding is that there is no distinction under the Harter Act to be made between a steamship carrier, which supplies its own motive power, and another carrier, made up of a barge without motive power and a towing tug. The position taken by libelant, that the tug cannot invoke the protection of the Harter Act (Comp. St. §§ 8029–8035), otherwise than through an agreement that it shall have the benefit of the act, seems to us to beg the whole question. Either this, or we are begging it in the view we have taken. We have assumed that, had the cargo here been carried in a steamship, no question of the application of the Harter Act would have been raised. It was only raised, and the benefits of the Harter Act denied to the respondent owners and to the tug, because of the circumstance that the tug towed the barge.

As before stated, as we read the Sacramento Case, no such distinction can be made. This supplies the answer to the question asked: "There being no carrier involved, how can the tug escape liability from negligent navigation"? The answer is that there is a

carrier, because tug and barge together form the carrier, and the Harter Act exempts the owners from liability in personam, and likewise the carrier vessel in rem. This court did, it is true, rule that the tug was not within the provisions of the Harter Act; but we so ruled wholly in deference to the view of the admiralty bar that a tug was without the act. In this the bar was wrong, because a tug may, as it here does, become merged with the barge carrier, and we were wrong in following the view of the admiralty bar.

This sums up the whole situation. The argument is that a tug towing a carrying barge is liable, if libeled in rem, because she is not a carrier. This is flying in the face of the Sacramento Case, which rules that a tug under such a situation is merged in the carrying vessel. The argument concedes that the owners of the carrier are not liable in personam. As we view it, this is a concession of the whole case, because, as before stated, the Harter Act makes no distinction between carrier owners and vessel, but extends a like exemption to both.

A decree dismissing the libel, with costs, may be submitted.